## LOCKE STEEL CHAIN CO. v. LINK BELT CO.

### No. 4192.

Circuit Court of Appeals, Seventh Circuit.

March 19, 1930.

George F. Scull, of New York City, for appellant.

Donald M. Carter, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

PAGE, Circuit Judge.

Infringement is charged of the following patents: No. 1,107,831, to H. Osswald, "apparatus for making chain," filed May 12, 1908, issued August 18, 1914; No. 1,157,175, to H. Osswald, "chain link and the process of making and assembling same," filed July 18, 1914, issued October 19, 1915; No. 1,-107,808, to S. D. Locke, "chain link," filed May 12, 1908, renewed October 2, 1913, issued August 18, 1914.

The District Court held all the patents invalid for want of invention, and that the Osswald patents were invalid on the fur-

ther ground that they were conceptions of Locke and not of Osswald.

The links, and the chains assembled from them, are substantially the same as those made by appellant, called plaintiff, for nearly forty years, and by appellee, called defendant, for a longer time, except that defendant's earlier links were made of malleable iron under patent No. 154,594, issued to Ewart (defendant's then president) in 1874.

The father of Sylvanus D. Locke, now vice president and treasurer of plaintiff, procured the following patents: In 1875, No. 160,107, "chain links and chain;" in 1888, No. 393,912, "method of making drive chains"; in 1888, No. 393,913, "die for making drive chains;" in 1897, No. 580,579, "machine for making chain links."

Vieillard and H. Osswald, in 1897, procured patent No. 580,564, on link and chain making machines. Skogse, in 1899, procured patent No. 633,371, on link and chain making machine.

Plaintiff and its predecessor, organized in 1896, operated under all of the above patents, the last one of which expired in 1916.

The principal feature of Locke patent, No. 1,107,808, as described by plaintiff's expert Ray, is shown as 6 in Figure 5.

and, in another form, as 18 in Figure 11:

These devices are old and common ones, used to prevent breaking or tearing, liable to occur if the corners are left square. Rounded corners are found in Locke No. 160,107, issued in 1875, and in Hart, No. 483,843, issued in 1892.

The Osswald die patent, No. 1,107,831 is limited to one specific form of die. The substance of the testimony of Ray is that the object of the Osswald patent, No. 1,-575,175, is to systematize the steps in form-

ing the link so that there will not be harmful strains upon the metal, and so that work once done will not have to be undone. Comparisons are made between the Osswald patent, No. 1,157,175, and the Skogse, No. 663,371. Those differences are illustrated in Figure 10 of the Skogse patent,

and, if it was, there would be no weakening of the metal by any necessary subsequent operation.

An extended discussion of the patents is unnecessary. There is no invention involved in changing the order in which the different operations were made in what is called the

and Figure 2 of the Osswald Patent.

new process; that is, under the patents in

Another difference is said to be illustrated by Figure 9 of the Osswald Patent and Figure 6 of the Osswald Patent, both produced below:

suit. Nothing more than mechanical skill was employed.

We have examined the record with considerable care to ascertain whether the claim

Figure 6 was made to represent an operation under the Skogse patent.

Comparing Figure 10 and Figure 2, it will be seen that in Figure 10 the cross-crimping, marked at *t*, is postponed in Osswald and appears at *88* in Figure 2. The claim is that, in following the operation under Skogse and making the cross-scoring at *t*, the bulge *96*, in Figure 6 is made, that there should be no bulging of the metal, but that the form should be as shown in Figure 9, and that that bulge must be taken out by a subsequent operation because the metal must be bent in an opposite direction and is thereby weakened.

Plaintiff's· expert Ray testified: "The Skogse Patent, with the dies made as shown in that patent, does not produce this bulge *96*." He is supported by an examination of the patent itself. Testifying upon this same point, defendant's expert says that *96* would not be produced by any Skogse operation,

of advantages, made by plaintiff, is supported by the evidence. Witnesses for plaintiff, all of whom were either officers or employees, were very liberal in their condemnation of what they call the old process; that is, the process of making under the Skogse and other prior patents. They say that the machines were continually breaking down, that it took five mechanics to keep them in repair, and that then they functioned but imperfectly; whereas, under the new method, after a year or two of work in perfecting the operations, the new machines worked perfectly, with the minimum of repairs and service. If all this is true, it might show defective mechanical construction, but would not necessarily show that any invention was involved in the new system. But a very serious doubt is thrown upon all of this testimony by the fact that, although the new system was commenced in 1905, and fully perfected in 1908, the old machines were kept

in operation, some of them until 1916, the time when the Skogse patent expired.

Again, it is urged that there were more rejections of chains made by the old method than under the new. Yet it appears that Locke, the vice president, and one or more of the other officers of plaintiff had made affidavits (that apparently brought plaintiff's interests success in a chancery case in the New York courts) wherein it was said that the rejections under the old method were small and never at any time exceeded 2 per cent. No accurate record thereof was ever kept. It further appears that those rejections came from tests in the factory, not from rejections made by customers who had purchased the chain. In fact, it appears that one size of chain, made by the old method was taken by a large Canadian concern up to the very last. The chains made by the old and the new method could not be distinguished by examination, and it does not appear that there was anything in their use that showed that one was better than the other.

The record shows quite conclusively that the conception upon which the patents in question were issued to Osswald was not that of Osswald, but of Locke.

We are of opinion that the decree of the District Court, dismissing the bill, should be, and it is affirmed.